## HAMILTON et al. v. WALLERS.

Where the evidence is not brought up on appeal in equity, the finding of the court below upon the facts in the case will be regarded as conclusive.

An informal release of claim right to government land can impart no equity in the land after it has been purchased from the government.

An application for the appointment of a commissioner to take depositions made about the time set for the trial of the cause, was denied, and the court decided that as the cause had been set for trial at the previous term, and as the witnesses were in attendance, the trial should go on, and that the witnesses might be examined accordingly; held that the proceeding was justifiable.

Any action of the court below upon immaterial and irrelevant questions and answers in taking testimony, would not justify a change in the decision.

H. entered in his own name eighty acres of land in trust for W., and W. paid him the price agreed upon and took from H. an obligation to make a deed as soon as the patent should issue. H. subsequently assigned his duplicate to B., without consideration, and with notice that he had given a title bond to W., and B. soon after obtained a patent; held that B. might, in equity, be required to convey the land to W.

In EQUITY.  *Appeal from Marion District Court.*

Opinion by GREENE, J.  Bill filed by James M. Walters, in which William L. Hamilton and Lysander W. Babbitt were made defendants.  The bill alleges, in substance, that on the first day of March, 1850, the complainant engaged the defendant, Hamilton, to enter in his own name, at the Fairfield land office, the east half of the north-east quarter of section twelve, in township seventy-five, north of range twenty west, in Marion county, Iowa; that the land was entered with the agreement that if complainant paid, in a short time to Hamilton, the purchase money, and an additional amount for his trouble in entering the land, and as interest on his money, that Hamilton was to execute to complainant a warrantee deed for said land, whenever a patent should issue for the same; that under this agreement the land was entered by Hamilton, March 1st, 1850, and on

the fourth day of the same month complainant paid Hamilton the sum of one hundred and five dollars, the amount agreed upon as purchase money, and for trouble and *interest*, and therefore received from said Hamilton an instrument in writing, by which he stipulated that he had bargained and sold to complainant the land in question for the sum of one hundred and five dollars, and obligated himself to make a good warranty deed to complainant for the land, as soon as the patent should issue; that this instrument was duly recorded in Marion county, Iowa; that afterward, on the twelfth day of March, 1850, the said defendants fraudulently combined together for the purpose of depriving complainant of all interest in the land, and with that intent Hamilton, at the earnest solicitation of Babbitt, assigned to him the land office duplicate with the intention of having the patent issue in Babbitt's name, and thereby deprive complainant of all title to the land; that September 13th, 1850, the patent was issued by the United States to said Babbitt; that at the time the duplicate was assigned by Hamilton to Babbitt, and previous thereto, said Babbitt had express notice that Hamilton had entered the land at the request and for the benefit of complainant, also notice that he had made full payment, and had Hamilton's written agreement for the land; and that Babbitt paid Hamilton very little, if anything, as a consideration for assigning to him the duplicate. The bill concludes with the usual prayer, that the defendants be required to answer, and also for a decree that Babbitt convey to complainant, by warranty deed, the land in question.

Hamilton's answer admits every material allegation in the bill, and states that at the time, and before he assigned the duplicate, he informed Babbitt that complainant held his title bond for the land.

Babbit's answer also admits nearly every allegation in the bill; but it also alleges that Hamilton was fraudulently induced to enter the land for complainant; that he, Babbitt,

had, at the time the land was entered, an equitable interest in it, that he had purchased a claim to a portion of it, was in possession and had valuable improvements upon it, and that the facts were known by complainant, and that he fraudulently caused the entry to be made for the purpose of defrauding respondent; and that he paid Hamilton twenty-five dollars for the assignment of the duplicate. Other averments not responsive to the bill are contained in this answer, but are denied by complainant's replication under oath. Replication denies that Babbitt had any legal or equitable right to the land, but admits that he had a claim so called, and that there was some improvement upon the land.

Witnesses were examined in the court below, but as their evidence was not reduced to writing, we cannot be guided by their testimony. In a review of the case we can only be governed by the bill, answer and replication, and the few items of evidence which are brought to us by bill of exceptions. As the evidence is not before us, we must regard the finding of the court below upon the facts in the case as conclusive. In addition to the facts admitted by the answers, the court found that Babbitt paid Hamilton no consideration for the duplicate receipt which was assigned to him, and upon which he obtained the patent; and that the equitable title to the land is in complainant. Accordingly the court decreed that Babbitt should convey the land to complainant.

Upon the trial several bills of exceptions were taken, which we will proceed briefly to examine:

1. By the first it appears that Babbitt offered to introduce the record of a deed from one Ryan to him, to show that he had purchased Ryan's claim to a portion of the land before it was entered by Hamilton. It is now claimed that the court erred in sustaining the objection to this evidence. As the instrument was a mere informal release of claim right to government land, it could impart no equity,

nor give greater validity to the naked legal title which Babbitt had acquired by the patent, nor could it detract from Hamilton's right, or the right of any other citizen to purchase the land from government. In a word, it could in no way affect the merits or equities of the case, it had no material bearing upon the issue, and was, therefore, properly excluded.

2. By the second bill of exceptions it appears that about the time for trial and before the case was called, the defendant, Babbitt, requested the court to appoint a commissioner to take depositions to be used as evidence in the cause, which the court refused to do, but decided that as the cause had been set for trial at the last term, and as the witnesses had been subpœned, that the cause must be heard, and that the parties might examine the witnesses orally before the court. We see nothing oppressive or unauthorised in this ruling of the court. It is true that the evidence in the case should have been reduced to writing so that the parties might have had the full benefit of the evidence on appeal. If the application for a commissioner to take depositions had been made at the previous term of the court it would doubtless have been granted. But as the cause had been set for trial at the previous term and as the application was not made till the time of trial had arrived, we think the court was justified in overruling it.

3. The only remaining bill of exceptions contains many questions to witnesses, and answers, which it is urged were either improperly overruled or improperly admitted. Those which are represented as most objectionable in their admission or rejection, have, we think, no material bearing upon the case and however disposed of, could produce no change in the decision. Any action of the court below upon immaterial or irrelevant questions and answers in taking testimony, could not justify this court in reversing the decision.

So far as the record presents the case we cannot avoid an affirmance. Hamilton appears to have acted in trust for

complainant in purchasing the land.   Complainant had paid the requested consideration, and acquired complete equity to the premises, and he alone was entitled to the legal title which had been secured for him by Hamilton.   When Hamilton assigned the duplicate to Babbitt, he acted in violation of the trust which he had assumed, and for which he had been paid ; he transferred a right which he had previously sold for a full consideration, and was virtually defrauding complainant.   Babbitt had notice of complainants' rights, and cannot be regarded as an innocent purchaser.

As the land was subject to be *entered* by any person, Babbitt had the same opportunity to purchase it that complainant had, and as B. had it under a claim and improvement it is to be regretted that he did not make them available by securing title to the land.   He can only attribute the loss to his own negligence.   However strong the moral obligation may be to respect such claims and improvements, it is clear that no rule of law or equity can be found which could preclude a man from making such an entry or which could transfer the title acquired by the entry from the purchaser to the former possessory claimant.

Although the right to sell and purchase claims and improvements upon the public lands, is recognised by our laws so far as to make any sale of such improvement a sufficient consideration to sustain a promise, still such claim right can in no way impair or come in conflict with the title which a purchaser may acquire from the United States.

As the record presents the case to our consideration, we I can see no good reason for disturbing the decree below.

Decree affirmed.

*Curtis Bates*, for appellants.

*Casady* and *Tidrick*, for appellee.